IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JIMMY JONES SCOTT,
    Plaintiff,

vs.                                    Case No.: 3:19cv1549/MCR/EMT

LIEUTENANT P.A. REYES, et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff, an inmate of the Florida Department of Corrections ("FDOC") proceeding pro se and in forma pauperis, commenced this action on May 21, 2019, by filing a civil rights complaint (ECF No. 1). Presently before the court is Plaintiff's Second Amended Complaint (ECF No. 18).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). After careful consideration of the issues presented by Plaintiff, it is the opinion of the undersigned that all of Plaintiff's claims against all Defendants should be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

I.  BACKGROUND

Plaintiff names four Defendants in this case, all of whom were members of the security staff at Santa Rosa Correctional Institution at the time of the events giving rise to this action: Lieutenant Reyes, Sergeant Turner, Officer Goodyear, and Officer Dennis (ECF No. 18 at 1–2).[1] Plaintiff claims that Defendants violated his Eighth Amendment rights by using excessive force against him on May 22, 2015 (*id.* at 6–8). He seeks compensatory and punitive damages against Defendants in their individual and official capacities (*id.* at 9).

II.  STATUTORY SCREENING STANDARD

Because Plaintiff is a prisoner proceeding in forma pauperis, the court must dismiss this case if the court determines that Plaintiff's allegations fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1). The statutory language "tracks the language of Federal Rule of Civil Procedure 12(b)(6)," therefore, dismissals for failure to state a claim are governed by the same standard as Rule 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). The allegations of the complaint are taken as true and construed

---

[1] The court refers to the page numbers automatically assigned by the court's electronic filing system, rather than the page numbers of the original documents.

Case No.: 3:19cv1549/MCR/EMT

in the light most favorable to Plaintiff. *See Davis v. Monroe Cnty. Bd. of Educ.*, 120 F.3d 1390, 1393 (11th Cir. 1997).

To survive dismissal at the screening phase, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotation marks and citation omitted). The plausibility standard is met only where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint's allegations must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

III.  PLAINTIFF'S FACTUAL ALLEGATIONS

The court includes factual allegations from Plaintiff's Second Amended Complaint (*see* ECF No. 18 at 6–8) and any clarifying facts included in his initial Complaint (ECF No. 1) and First Amended Complaint (ECF No. 12). On May 22, 2015, Plaintiff was assigned Close Management III ("CM III") status, pursuant to Rule 33-601.800 of the Florida Administrative Code. Rule 33-601.800 defines Close Management as the following:

> The confinement of an inmate apart from the general population, for reasons of security or the order and effective management of the institution, where the inmate, through his or her behavior, has

demonstrated an inability to live in the general population without abusing the rights and privileges of others.

Fla Admin. Code r. 33-601.800(1)(d). There are three individual levels of CM, with CM III being the least restrictive housing. *See* Fla Admin. Code r. 33-601.800(1)(e).

Plaintiff was also serving a term of disciplinary confinement. Disciplinary confinement is punishment for an inmate's violating the FDOC's rules or procedures. *See* Fla. Admin. Code rr. 33-601.301–.314.

At approximately 8:35 a.m., Lieutenant Reyes and Sergeant Turner arrived at Plaintiff's cell to conduct a cell search. Reyes and Turner ordered Plaintiff and his cellmate to exit the cell and stand against the wall beside the cell door. Neither Plaintiff nor his cellmate was secured with restraints. Plaintiff asked Lieutenant Reyes what he was trying to plant in the cell. Sergeant Turner ordered Plaintiff to step back against the wall. Lieutenant Reyes said to Turner, "Let's see Governor Rick Scott get this up off of him." Plaintiff again stepped away from the wall and to the cell door to look into the cell. Sergeant Turner **again** ordered Plaintiff to step away from the cell and back against the wall. Lieutenant Reyes then rushed out of the cell, grabbed Plaintiff's left arm to turn him to face the wall, yelled, "Cuff up!," forced Plaintiff's face into the wall, and administered three or four quick, closed-fist hits to Plaintiff's back and back rib cage. Plaintiff turned back around, and Reyes administered two closed-fist hits to Plaintiff's right eye. Plaintiff grabbed a railing

(they were on the second floor of the wing) to prevent Reyes from hitting him, and in doing so he pinned Lieutenant Reyes between himself and the railing. Sergeant Turner grabbed Plaintiff from behind in a chokehold, and Lieutenant Reyes freed himself and punched Plaintiff in the nose, chin, mouth, and eyes with closed fists. Reyes and Turner then threw Plaintiff to the floor. Officer Dennis and Officer Goodyear arrived at the scene and began punching Plaintiff with closed fists. Officer Dennis, Lieutenant Reyes, and Sergeant Turner also kicked Plaintiff. The officers secured Plaintiff with handcuffs. The use of force lasted approximately five (5) minutes.

Plaintiff was escorted to the medical department for a post-use-of-force medical examination. He was then placed in a temporary cell and told he would be moved to a different dormitory. When officers attempted to move Plaintiff to the new dormitory, he continued his resistance to their orders by refusing to exit the cell. The shift supervisor, who Plaintiff does not identify, authorized the use of chemical agent to facilitate Plaintiff's removal from the temporary cell and escort to the new dormitory.

As a result of the use of force in May of 2015, Plaintiff alleges he suffered "continuely [sic] back pain, half blood [sic] in his right eye if not legally blind to the right eye" (Second Amended Complaint at 7).

Case No.:  3:19cv1549/MCR/EMT

## IV. DISCUSSION

The "core judicial inquiry" in considering an excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992); *see also Whitley v. Albers*, 475 U.S. 312, 319–321, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986). "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated . . . . whether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

"In determining whether an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including these five: "the need for the application of force; the relationship between that need and the amount of force used; the extent of the threat to the safety of staff and inmates, as reasonably perceived by officials; the extent of injury; and any efforts made to temper the severity of the response." *Hudson*, 503 U.S. at 7–8; *see also Whitley*, 475 U.S. at 321. From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321. In

cases in which a collective use of force is alleged, the court need not analyze separately the force administered by each officer to determine which of the blows or other acts, if any, constituted the use of excessive force. " *Skrtich v. Thornton*, 280 F.3d 1295, 1302 (11th Cir. 2002).

Here, Plaintiff admits that Lieutenant Reyes initiated the use of force only **after** Plaintiff disobeyed **two** orders to stand facing the wall next to the cell door. Plaintiff admits Sergeant Turner joined in the use of force only **after** Plaintiff refused Lieutenant Reyes' order to "cuff up," resisted Reyes' efforts to turn him toward the wall, and even pinned Reyes between himself and the second-floor railing. And Plaintiff admits Officers Dennis and Goodyear joined in the use of force only to assist Reyes and Turner in securing Plaintiff. Plaintiff admits the officers ceased the use of force once he was secured with handcuffs. And he admits the entire use of force lasted only five (5) minutes.

Applying the *Whitley* factors, Plaintiff's factual allegations do not plausibly suggest that any officer's use of force was unjustified. The officers needed to apply force to restore discipline and order, and to obtain Plaintiff's compliance with their orders. The severity of their force increased only in response to Plaintiff's continued resistance. Further, Plaintiff posed a substantial threat to the officers' safety because he was unrestrained, physically resisting the officers' attempts to gain his

compliance, and even pinned an officer between his body and a second-floor railing. Taking Plaintiff's factual allegations as true, they do not plausibly suggest any officer used force maliciously and sadistically to cause harm. To the contrary, the facts show only that the officers used a reasonable amount of force that was necessary, under the circumstances, to restore discipline, ensure Plaintiff's compliance with their orders, ensure the officers' safety, and maintain security, safety, and order in the institution.

V.     CONCLUSION

The factual allegations of the Second Amended Complaint fail to state a plausible claim of excessive force against any Defendant. Therefore, Plaintiff's claims should be dismissed with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

Accordingly, it is respectfully **RECOMMENDED**:

1.     That Plaintiff's claims against Defendants **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1);

2.     That all pending motions be **DENIED as moot**; and

3.     That the clerk of court be directed to enter judgment accordingly and close the case.

At Pensacola, Florida, this 2nd day of March 2020.

/*s/ Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.** A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**

Case No.:  3:19cv1549/MCR/EMT